**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **KHYBER HOLDINGS LLC,** | § | |
| **Cross-Claimant,** | § | |
| | § | |
| ***v.*** | § | Civil Action No. 3:13-CV-0714-M-BK |
| | § | |
| **U.S. BANK NATIONAL** | § | |
| **ASSOCIATION,** | § | |
| **Cross-Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

This case has been referred to the undersigned for pretrial management. Now before the Court are Cross-Defendant's *Motion for Judgment on the Pleadings* (Doc. 17) and Cross-Claimant's *Motion for Summary Judgment* (Doc. 25). For the reasons that follow, it is recommended that both motions be **DENIED**.

## I. BACKGROUND

This case stems the foreclosure sale of former Plaintiffs Kevin and Sharon Little's real property by Cross-Defendant U.S. Bank National Association ("U.S. Bank"). The Littles originally purchased the property, located at 2406 Clear Creek Court, Cedar Hill, Texas 75104 ("the Property"), in 1995. (Doc. 25-2 at 28–29, Ex. B); *see* Doc. 10 at 34, Ex. D. They subsequently executed two notes touching the Property -- a $250,000 note for homebuilding improvements on August 15, 1996, and a $39,326 note for landscaping improvements on March 17, 1997. (Doc. 23-3 at 16). On March 24, 1997, the Littles refinanced the two notes, merging them into a single note, secured by a deed of trust to the Property, for $288,000 ("the 1997 Note"). (Doc. 25-2 at 33–45). Years later, the Littles took out a $472,000 home equity loan on June 11, 2005, evidenced by a promissory note ("the 2005 Note") and secured by the Property as memorialized in an instrument titled "Texas Home Equity Security Instrument (First Lien)"

1

(hereinafter "the Security Instrument").  (Doc. 18-1 at 2-29; Doc. 25-2 at 47–81).  The 2005 Note was subsequently assigned to Cross-Defendant U.S. Bank through a series of transactions.  *Id*. at 83–85.

A non-judicial foreclosure sale was conducted on May 5, 2009 by the neighborhood homeowners association, Property Owners Association of Lake Ridge ("HOA"), due to an outstanding assessment lien of $715.31.  The property was sold at foreclosure to Cross-Claimant Khyber Holdings LLC ("Khyber") for $2,600.  *Id*. at 87–91, Exs. G–H.

According to their petition, following the HOA foreclosure, the Littles continued to make payments to GMAC Mortgage LLC ("GMAC"), as servicer for U.S. Bank, and entered into a loan modification agreement with GMAC on April 1, 2010.  (Doc. 1-3 at 6).  Subsequent to the loan modification, and after they purportedly received notice of foreclosure from Khyber, the Littles executed a lease agreement with Khyber and, beginning in August 2011, and made lease payments totaling upwards of $66,000 to Khyber.  *Id*. at 7; Doc. 28 at 15.

In September 2012, GMAC sought to foreclose on the Property pursuant to the lien set forth in the Security Instrument.  (Doc. 10 at 4).  On January 23, 2013, the Littles filed a petition in state court to quiet title and for declaratory relief.  (Doc. 1-3 at 4, 6–9).  Specifically, they sought an order declaring that Defendants (including U.S. Bank) were not entitled to foreclose on the Property.  *Id*. at 8–9.

Defendants removed the case to this Court on February 12, 2013.  (Doc. 1).  After removal, Khyber filed its cross-claim against U.S. Bank seeking declaratory relief, arguing that the HOA lien was superior to U.S. Bank's mortgage lien, thus, the 2009 foreclosure extinguished U.S. Bank's lien.  (Doc. 10 at 4–5).  Subsequently, the Littles voluntarily dismissed their claims in this case, leaving only the instant crossclaim.  (Doc. 22).

Central to Khyber's legal theory is a covenant attached to the Property by its developer in 1995, which is found in the *Declaration of Covenants, Conditions and Restrictions of Lake Ridge at Joe Pool Lake Section One* (the "Declaration"). (Doc. 10 at 3). The relevant portion governs the right of the HOA to place a lien on the Property for failure to pay maintenance charges to the association. *Id*. at 61–65. It reads:

> The lien described in this Article VI [HOA lien for non-payment of assessments] shall be deemed subordinate to a first lien or other liens of any bank, insurance company, savings and loan Association, university, pension and profit sharing trusts or plans, or any other third party lender, including Developer, which may have heretofore or may hereafter lend money in good faith for the purchase or improvement of any Tract and any renewal, extension, rearrangement or refinancing thereof. Each such mortgagee of a mortgage encumbering a Tract who obtains title to such Tract pursuant to the remedies provided in the deed of trust or mortgage or by judicial foreclosure shall take title to the Tract free and clear of any claims for unpaid Maintenance Charges or other charges of assessments against such Tract which accrued prior to the time such holder acquired title to such Tract. No such sale or transfer shall relieve such holder from liability for any Maintenance Charge or other charges or assessments thereafter becoming due or from the lien thereof.

*Id*. at 64, Ex. H § 6.05. As noted by U.S. Bank, the Declaration further provides:

> No violation of the provisions herein contained, or any portion thereof, shall affect the lien of any mortgage or deed of trust presently or hereafter placed of record or otherwise affect the rights of the mortgagee under any such mortgage, the holder of any such lien[,] or beneficiary of any such deed of trust . . . .

(Doc. 10 at 71, Ex. H § 9.07).

It is not disputed that the 1997 loan refinanced the two notes that were for the improvements to the Property. But while the 2005 Security Instrument designates the lien memorialized therein as a "first lien," no other language in the document indicates the lien results from a loan for the purchase or improvement of the Property or the refinancing of the 1997 loan. (Doc. 25-2 at 47–71). That notwithstanding, the Littles application for the loan that resulted in the 2005 Note does contain numerous references to refinance of the existing note.

(Doc. 19 at 2–5).

U.S. Bank moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on April 15, 2013.  (Doc. 17).  Khyber subsequently moved for summary judgment on July 1, 2013.  (Doc. 25).  The parties make essentially the same arguments and rely on the same evidence in their respective motions and responses.

## II.  APPLICABLE STANDARDS

### A.  Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (internal quotation marks omitted).  "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."  *Id.* (internal quotation marks and citations omitted).  The court must construe pleadings liberally, and judgment thereon is only appropriate if there are no disputed issues of fact and only questions of law remain.  *Id.* (citing *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).  In analyzing a plaintiff's complaint, the court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff.  *Id.* at 312–13.  Conversely, the court will not accept as true conclusory allegations or unwarranted deductions of fact.  *Id.* at 313. (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000)).

The pleading standard for a Rule 12(c) motion is the same as for a motion to dismiss under Rule 12(b)(6).  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  A court ruling on

4

a Rule 12(c) motion may rely on the pleadings, documents properly attached to the complaint, documents incorporated into the complaint by reference, documents outside the pleadings but attached to the motion, and matters of which a court may take judicial notice. *Great Plains Trust*, 313 F.3d at 313–14; *see Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (discussing Rule 12(b)(6)).

### B.   Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (internal quotes omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*. Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts

in favor of the nonmoving party. *Id*.   However, Rule 56 does not impose a duty on the court to

"sift through the record in search of evidence" to support the non-movant's opposition to the

motion for summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th

Cir. 1998); *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir. 1992).

The party opposing summary judgment is required to identify specific evidence in the record and

to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at

458.

### III.  DISCUSSION

U.S. Bank contends that (1) the Security Instrument states on its face that it is a "first

lien," thus comporting with Section 6.05 of the Declaration, and (2) the 2005 Note is a refinance

of the 1997 Note, also comporting with the Declaration.  (Doc. 17 at 6–7).  Specifically, U.S.

Bank asserts that the assessment lien is inferior to its security interest because, under the

Declaration, the assessment lien is made "subordinate to a first lien *or* other liens . . . for the

purchase or improvement" of the Property and "any renewal, extension, rearrangement, or

refinancing thereof." *Id*. at 6 (emphasis added).  It contends that the Declaration's clause -- "for

the purchase or improvement of any Tract" -- qualifies the term "other liens," but does not

qualify any "first lien," thus, it is immaterial whether the lien resulted from a loan for the

Property's purchase or improvement. *Id*.; (Doc. 24 at 2).  U.S. Bank alternatively relies on the

2005 loan application to establish that the 2005 Note is, in fact, a refinance of the Littles' 1997

mortgage loan, concluding thusly that the assessment lien was subordinate to the Security

Instrument which stems from the mortgage refinance. *Id*. at 7.  Section 6.05 notwithstanding,

U.S. Bank also notes that the Declaration separately provides that no violation of its terms "shall

affect the lien on any mortgage . . . or otherwise affect the rights of the mortgagee under any

such mortgage." *Id*.

Khyber argues that the HOA assessment lien was superior to U.S. Bank's lien because U.S. Bank's lien "is not a purchase money lien, nor is it a lien related to improvement of" the Property.  (Doc. 10 at 5.)  Khyber correctly notes the Security Instrument itself states that it "is not intended to finance Borrower's acquisition of the property," and also proclaims it is "an Extension of Credit" as defined in the Texas Constitution, which cannot be used to purchase property.  (Doc. 23 at 6.)  Khyber avers that the 2005 loan application is vague, does not mention the 1997 Note, and contains numerous other errors and contradictions, such as the date the Property was acquired.  *Id*. at 8.  Khyber, relying on Section 192.007(a) of the Texas Property Code, further argues that neither the 2005 Note nor the Security Instrument constitute a refinancing because they contain no provisions that declare them such, and even then, they would need to be recorded as refinancing instruments with the Dallas County clerk.  *Id*. at 6–7, 9.  In rebuttal, U.S. Bank asserts that Section 192.007(a) merely imposes an administrative requirement and does not interfere with the substantive rights of its interest in the Property.  *Id*. at 2-3.

Under Texas law, property interests senior to any lien foreclosed do not terminate upon foreclosure; the successful bidder at a junior lien foreclosure takes title subject to the prior liens. *DTND Sierra Invs. LLC v. Bank of Am., N.A.*, 871 F. Supp. 2d 567, 573 (W.D. Tex. 2012) (citing *Conversion Props, LLC v. Kessler*, 994 S.W.2d 810, 813 (Tex. App.—Dallas 1999). Consequently, for U.S. Bank to prevail, it must prove its lien is superior to the assessment lien by establishing: (1) that the 2005 Note and Security Instrument result from a loan to refinance the 1997 Note; (2) showing that the 2005 Note was indeed a "first lien"[1] *and* that Section 6.05

---

[1] *Cf. ABN AMRO Mortg. Grp. v. TCB Farm & Ranch Land Invs.*, 200 S.W.3d 774, 775,

imposes no further requirement that such lien result from a purchase-money or refinance loan to be superior to the assessment lien; or (3) proving that its loan and security instruments constitute a "mortgage" as contemplated by Section 9.07.  U.S. Bank has not met that burden here.

A genuine issue of material fact exists regarding the purpose and status of the 2005 loan and the resulting Note and Security Instrument, as evidenced by language in the loan application that the purpose was to refinance the existing mortgage, which is contradicted by language in the Security Instrument the loan was "not intended to finance Borrower's acquisition of the property" and indicating it was "an Extension of Credit."  For the same reason, Khyber is not entitled to summary judgment.  That is not to say that after discovery is conducted, the evidence will not establish the facts conclusively.  However, at this juncture, when the evidence before the Court is considered in the light most favorable to the non-movant, neither party has met its burden of establishing entitlement to judgment.

## IV.  CONCLUSION

For the foregoing reasons, it is recommended that U.S. Bank's *Motion for Judgment on the Pleadings* (Doc. 17) be **DENIED** and Khyber's *Motion for Summary Judgment* (Doc. 25) be **DENIED**.

**SO RECOMMENDED** on January 9, 2014.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

(Tex. App.–Fort Worth 2006) (holding that deed of trust held by mortgage company from time of refinancing original mortgage loans was a first lien "as a matter of law" under the Texas Tax Code redemption provisions).

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fᴇᴅ. R. Cɪᴠ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

9