IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KHYBER HOLDINGS LLC, <br>     Cross-Claimant, | § § § | |
| v. | § § | Civil Action No. 3:13-CV-0714-M-BK |
| U.S. BANK, N.A., <br>     Cross-Defendant. | § § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

This case has been referred to the undersigned for pretrial management. Now before the Court are U.S. Bank's *Motion for Summary Judgment*, Doc. 52; U.S. Bank's *Motion to Exclude Plaintiff's Proposed Expert*, Doc. 53; and Khyber's *Motion for Summary Judgment*, Doc. 56. For the reasons that follow, it is recommended that U.S. Bank's motion for summary judgment be **GRANTED**, Khyber's motion for summary judgment be **DENIED**, and the motion to exclude be **DENIED AS MOOT**.

**I.   BACKGROUND**

This case stems the attempted foreclosure sale of former Plaintiffs Brent and Sharon Little's real property by Cross-Defendant U.S. Bank, N.A. ("U.S. Bank"). The Littles originally purchased the property, located at 2406 Clear Creek Court, Cedar Hill, Texas 75104 ("the Property"), in 1995. Doc. 52-2 at 2-4; Doc. 52-10 at 6. They subsequently executed two notes touching the Property -- a $250,000 note for homebuilding improvements on August 15, 1996, and a $39,326 note for landscaping improvements on March 17, 1997. Doc. 52-2 at 7-12; Doc. 52-2 at 14-18; Doc. 52-10 at 6-7. On March 24, 1997, the Littles refinanced the two notes, merging them into a single note, secured by a deed of trust to the Property, for $288,000 ("the 1997 Loan"). Doc. 52-2 at 20-32; Doc. 52-10 at 7.

Years later, the Littles obtained a loan in the amount of $400,000, secured by a security instrument on the Property (the "2004 Loan"). Doc. 52-3 at 2-19; Doc. 52-10 at 8. The Littles used the proceeds of the 2004 Loan to pay off the 1997 Loan, after which they only made mortgage payments on the 2004 Loan.[1] Doc. 52-4 at 3-4; Doc. 52-4 at 7; Doc. 52-10 at 8. At his deposition, Brent Little testified that, to his knowledge, they never had a "second mortgage" on the Property. Doc. 52-10 at 8.

The Littles took out a $472,000 home equity loan on June 11, 2005, evidenced by a promissory note (the "2005 Loan") and secured by the Property as memorialized in an instrument titled "Texas Home Equity Security Instrument (First Lien)" (hereinafter "the Security Instrument"). Doc. 52-4 at 9-34; Doc. 52-5 at 2-9; Doc. 52-5 at 11-14. The proceeds of the 2005 Loan were used to pay off the 2004 Loan. Doc. 52-5 at 16-18; Doc. 52-5 at 20-21; Doc. 52-10 at 9 (Kevin Little's deposition). The 2005 Loan was subsequently assigned to U.S. Bank through a series of transactions. Doc. 52-5 at 23-25.

A non-judicial foreclosure sale was conducted on May 5, 2009 by the neighborhood homeowners association, Property Owners Association of Lake Ridge ("HOA"), due to an outstanding assessment lien of $715.31. Doc. 52-9 at 9-10; Doc. 52-9 at 12-14. The HOA's rights were sold at foreclosure to Cross-Claimant Khyber Holdings LLC ("Khyber") for $2,600. Doc. 52-9 at 12. Following the HOA foreclosure, the Littles continued to make payments to GMAC Mortgage LLC ("GMAC"), as servicer for U.S. Bank, and entered into two loan modification agreements with GMAC in March 2010 and June 2011. Doc. 52-11 at 2-4, 6-11. Subsequent to the loan modification, and after they received notice of foreclosure from Khyber,

---

[1] Though Khyber objected to the evidence supporting this fact in its *Motion to Strike Defendant's Summary Judgment Evidence*, Doc. 54, the Court overrules those objections in an Order accompanying this opinion.

2

Doc. 52-10 at 10, 12 (Little Dep. 31:1-20), the Littles executed a lease agreement with Khyber and, beginning in August 2011, made lease payments totaling more than $90,000 to Khyber. Doc. 52-10 at 14 (Little Dep. 39:14-25, 47:12-18).

In September 2012, after the Littles began making lease payments to Khyber and stopped making monthly payments on the 2005 Loan, GMAC sought to foreclose on the Property pursuant to the lien set forth in the Security Instrument. Doc. 52-6 at 2-6. On January 23, 2013, the Littles filed a petition in state court to quiet title and for declaratory relief. Doc. 1-3 at 4, 6-9. Specifically, they sought an order declaring that Defendants (including U.S. Bank) were not entitled to foreclose on the Property. Doc. 1-3 at 8-9. Defendants removed the case to this Court on February 12, 2013. Doc. 1. After removal, Khyber filed its cross claim against U.S. Bank seeking declaratory relief, arguing that the HOA lien was superior to U.S. Bank's mortgage lien and, thus, the 2009 foreclosure extinguished U.S. Bank's lien. Doc. 10 at 4–5. Subsequently, the Littles voluntarily dismissed their claims in this case, leaving only the instant cross claim. Doc. 22.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once

the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Id*. However, Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the non-movant's opposition to the motion for summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir. 1992). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458.

### III.  DISCUSSION

This case turns on whether U.S. Bank's lien, as created by the 2005 Security Instrument, is superior to the lienholder rights obtained by Khyber through its foreclosure purchase of the HOA's assessment lien. Central to this pivotal issue and, thus, the disposition of this case, is a covenant attached to the Property in 1995 by its developer and found in the *Declaration of Covenants, Conditions and Restrictions of Lake Ridge at Joe Pool Lake Section One* (the "Declaration"). Doc. 52-1. The relevant portion governs the right of the HOA to place a lien on

the Property for failure to pay maintenance charges to the association. Doc. 52-1 at 13-17

(Declaration art. VI). It states:

> The lien described in this Article VI [HOA lien for non-payment of assessments] shall be deemed subordinate to a first lien or other liens of any bank, insurance company, savings and loan Association, university, pension and profit sharing trusts or plans, or any other third party lender, including Developer, which may have heretofore or may hereafter lend money in good faith for the purchase or improvement of any Tract and any renewal, extension, rearrangement or refinancing thereof. Each such mortgagee of a mortgage encumbering a Tract who obtains title to such Tract pursuant to the remedies provided in the deed of trust or mortgage or by judicial foreclosure shall take title to the Tract free and clear of any claims for unpaid Maintenance Charges or other charges of assessments against such Tract which accrued prior to the time such holder acquired title to such Tract. No such sale or transfer shall relieve such holder from liability for any Maintenance Charge or other charges or assessments thereafter becoming due or from the lien thereof.

Doc. 52-1 at 64 (Declaration § 6.05) ("Section 6.05"). The Declaration further provides:

> No violation of the provisions herein contained, or any portion thereof, shall affect the lien of any mortgage or deed of trust presently or hereafter placed of record or otherwise affect the rights of the mortgagee under any such mortgage, the holder of any such lien[,] or beneficiary of any such deed of trust . . . .

Doc. 52-1 at 23 (Declaration § 9.07) ("Section 9.07").

    **A.  U.S. Bank's *Motion for Summary Judgment***

U.S. Bank argues that its 2005 Loan to the Littles refinanced the 2004 Loan, which was a refinance of the 1997 Loan's consolidation of the improvements and construction loans, and thus it has a "first lien" as described in Section 6.05 of the Declaration. Doc. 52 at 13-14. U.S. Bank also contends that it prevails under the specific provision of Section 9.07 of the Declaration that no violation of its terms "shall affect the lien on any mortgage . . . or otherwise affect the rights of the mortgagee under any such mortgage." Doc. 52 at 15 (quoting Doc. 52-1 at 23). Khyber responds that under the "first in time, first in right" precept, the HOA assessment lien under which it obtained its interest is superior because the covenant under which it was assessed

5

initiated in 1995 and runs with the land. Doc. 55 at 5-7. Khyber also argues that, in any event, U.S. Bank's summary judgment evidence, specifically the certificate of release issued by Wells Fargo Home Mortgage of the 1997 lien, Doc. 52-4 at 7, fails to establish that proceeds of the 2004 Loan were utilized to pay off the 1997 Loan, since nothing in the record indicates Wells Fargo Home Mortgage was the lienholder. Doc. 55 at 10.

It is not disputed that the 1997 Loan refinanced the two notes that were for the improvements to the Property (construction). And, apparently, it is no longer disputed that the 2005 Loan from which U.S. Bank obtained its interest refinanced the 2004 Loan.[2] Rather, considering the claims asserted, the applicable law, and the parties' arguments, the dispositive issue is whether the proceeds from the 2004 Loan were used to pay off the 1997 Loan, thus, establishing through a chain of transactions that the 2005 Loan is traceable to, and is a refinance of, the original 1997 Loan. An answer in the affirmative would establish the superiority of U.S. Bank's security interest over that of Khyber.

The record clearly establishes that proceeds of the 2004 Loan were used to refinance the 1997 Loan. As evidence, U.S. Bank submitted a 2004 certificate of release from Wells Fargo (authenticated by Katherine Ortwerth's declaration), and Brent Little's deposition testimony. Doc. 52-4 at 7 (certificate of release); Doc. 52-10 at 8 (Kevin Little Dep. 23:21-24:11) (confirming that, to his knowledge, he and his wife never had a "second mortgage" on the Property). Still, Khyber contends that there is no document in the Dallas County property records showing that the identification number of the 1997 Loan was 936-0030811426 (the loan number noted in the certificate of release). Doc. 55 at 10-11. Khyber also maintains that, by its

---

[2] In 2013, in denying Khyber's first motion for summary judgment, the Court accepted the findings of the undersigned magistrate judge that on the record submitted, there existed a genuine issue of material fact regarding the purpose and status of the 2005 Loan and the resulting Security Instrument. Doc. 33 at 8.

6

terms, the certificate of release required subsequent release documents to be recorded for title to clear, yet no release of the security interest created by the 1997 Loan and its deed of trust has ever been recorded. Doc. 55 at 11. The Court finds Khyber's arguments unpersuasive.

In rebuttal, U.S. Bank has produced evidence from the Dallas County property records showing that the 1997 Loan's identifying number was identical to the loan number on the Wells Fargo certificate. Doc. 58-1 at 2 (Assignment of Note and Deed of Trust); Doc. 58-1 at 5 (Removal of Trustee). Additionally, although Wells Fargo is not expressly listed as servicer for State Street Bank, Wells Fargo is listed in the loan-identifying information at the top of the document titled "Removal of Trustee and Appointment of Substitute Trustee." Doc. 58-1 at 5. Significantly, both documents were recorded in 2001, long before the 2004 or 2005 Loans. Doc. 58-1 at 4, 7. In arguing that the release documents should have been recorded to clear title, Doc. 55 at 11-12, Khyber only points to the certificate of release and not to any legal authority requiring that release documents be recorded to have legal consequence. Moreover, Khyber's argument misses the point that what is relevant here is not whether there is a defect in the Property title, but whether the funds from the 2004 Loan were used to refinance the existing mortgage loan so that the Property title is subject to U.S. Bank's lien. The Court concludes that the Wells Fargo certificate of release is valid evidence of the latter.

U.S. Bank's evidence clearly establishes that the 2004 Loan was used to refinance the 1997 Loan to pay for the Littles' home construction and no rational trier of fact could conclude otherwise. *See Matsushita Elec. Indus. Co.. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). And by extension, the 2005 Loan, which refinanced the 2004 Loan, is a first lien under the Declaration.

As a result, the Security Instrument is superior to the assessment lien. Thus, U.S. Bank's motion for summary judgment should be granted, and judgment should be rendered in its favor.

### B.  Khyber's successive *Motion for Summary Judgment*

Local Rule of Civil Procedure 56.2(b) provides that "[u]nless otherwise directed by the presiding judge, or permitted by law, a party may file no more than one motion for summary judgment." This rule "enables the court to regulate successive motions that are filed after the court has devoted time and effort to deciding an initial motion and has identified issues that are not subject to summary disposition, but as to which the movant seeks a second bite at the apple." [Home Depot USA, Inc. v. Nat'l Fire Ins. Co. of Hartford, No. 06-CV-0073, 2007 WL 1969752 at *2 (N.D. Tex. 2007)](#) (Fitzwater, J.). The court "retains ultimate control," and may allow a party to file a second motion for summary judgment. *[Id.](#)* However, Khyber did not seek leave to file a second motion for summary judgment. Moreover, given that U.S. Bank's motion for summary judgment disposes of all remaining issues before the Court, as discussed in detail *supra*, Khyber's motion for summary judgment should be summarily denied.

### IV.  CONCLUSION

For the foregoing reasons, it is recommended that U.S. Bank's *Motion for Summary Judgment*, [Doc. 52](#), be **GRANTED**, Khyber's *Motion for Summary Judgment*, [Doc. 56](#), be **DENIED**, and U.S. Bank's *Motion to Exclude Plaintiff's Proposed Expert*, [Doc. 53](#), be **DENIED AS MOOT**.

**SO RECOMMENDED** on February 27, 2015.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE